FILED
CLERK, U.S. DISTRICT COURT

AUG 2 8 2024

CENTRAL DISTRICT OF CALIFORNIA
BY _____ MAV _____ DEPUTY

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALEB L. MCGILLVARY ) | CIVIL ACTION NO. |
| PLAINTIFF ) | |
| ) | 2:24 cv 7473-MRA(SKx) |
| V. ) | |
| ) | |
| THEODOR ) | |
| VONKURNATOWSKI, ) | |
| BRIAN MONARCH ) | |
| DEFENDANT ) | |

## COMPLAINT

## I. PARTIES IN THIS COMPLAINT
## A. PLAINTIFF (*PRO SE PLAINTIFF IS INCARCERATED*)
NAME: Caleb L. McGillvary
STREET ADDRESS: #1222665/SBI#102317G NJSP Po Box 861
COUNTY, CITY: Mercer, Trenton
STATE & ZIP CODE: New Jersey 08625
TELEPHONE NUMBER: N/A

## B. DEFENDANTS
NAME: Theodor VonKurnatowski
STREET ADDRESS: 401 South Barrington Ave
COUNTY, CITY: Los Angeles, Los Angeles
STATE & ZIP CODE: California 90049
TELEPHONE NUMBER: Unknown

NAME: Brian Monarch
STREET ADDRESS: 4374 Ventura Canyon Ave, Unit 2
COUNTY, CITY: Unknown, Sherman Oaks
STATE & ZIP CODE: California 91423
TELEPHONE NUMBER: Unknown

1

## II. BASIS FOR JURISDICTION

This Court has jurisdiction under 28 U.S.C. 1331 and 28 U.S.C. 1338 over plaintiff's claims under 17 U.S.C. 501 et seq. This Court has jurisdiction under 28 U.S.C. 1332 and 28 U.S.C. 1367 over plaintiff's state law claims. Plaintiff is a citizen of Canada residing in New Jersey and Defendants are citizens of California. The amount in controversy exceeds $75,000.

## III. STATEMENT OF CLAIM

A. The events giving rise to these claims occurred at Theodor VonKurnatowski's place of residence and/or YouTube channel in or around Los Angeles, California

B. Where indicated, these claims accrued on October 1, 2021; on or about January 25, 2023; and on or about February 20 and 22, 2023; and on or about September 12, 2023.

C. The facts giving rise to these claims are as follows:

### INTRODUCTION

1.) Plaintiff Caleb L. McGillvary ("Plaintiff") immigrated to America from Canada in 2012. He has never been convicted of any crime in Canada. Plaintiff is a professional street performer who plays music and creates and performs troubadour and dramatic works while busking for money in public places and on his social media platforms. On February 1, 2013, in Fresno, CA, Plaintiff used his camping hatchet to heroically save a crowd of people from a violent white supremacist; who was trying to kill them all. Plaintiff immediately thereafter performed an interview consisting of spoken words and a dramatic work; which was broadcast on KMPH FOX News, and declined to perform an interview on any other station ("The Original Video"). The video of this interview went viral, and plaintiff became widely known as "Kai the Hatchet Wielding Hitchhiker"; a legendary folk hero. This video is incorporated herein from its URL, and is sine qua non to understanding what follows:
https://www.youtube.com/watch?v=-Xa0NfCdlk4

1  Plaintiff subsequently appeared under this widely recognized mark on
2  Jimmy Kimmel Live!, EBaumsworld, and the Gregory Brothers.
3  Plaintiff, who was a homeless street performer at the time, also enjoyed
4  a multitude of fans who invited him to stay with them at their homes.
5  Plaintiff still enjoys massive esteem, respect, goodwill, and confidence
6  from the millions of people who recognize him for his heroic actions on
7  February 1, 2013.
8  Plaintiff Caleb L. McGillvary ("Plaintiff") relies upon the Court Record
9  of People v McBride No. F13901235 in the California Superior Court of
10  Fresno County; and of People v McBride No. F068949 in the Court of
11  Appeal of California, 5th Appellate District; and incorporates same by
12  reference herein. Specifically, Plaintiff makes reference to the following
13  facts adduced at trial:
14  a.) Nelson Pereira ("Nelson"), Kenneth Simon ("Kenneth"), and Nicholas
15  Starkey ("Nicholas"); all eyewitnesses to the events of February 1, 2013
16  at the intersection of Marks and McKinley in Fresno, California ("The
17  incident"); each testified under oath that they could see into Jett
18  Simmons McBride ("McBride")'s car leading up to and including the
19  incident. They each saw that, immediately before McBride intentionally
20  crashed his car into a crowd of power line workers, McBride had both
21  his hands on the steering wheel; and that Plaintiff had his hands in
22  front of himself in his lap. Neither McBride nor Plaintiff were
23  communicating with each other, and Plaintiff was completely in the
24  passenger compartment of the car, with no part of himself in the
25  driver's compartment.
26  b.) Kenneth, Nicholas, and two other eyewitnesses to the incident;
27  Ginger Miller-Barraza ("Ginger") and Tonya Baker ("Tonya"); each
28  testified under oath that they observed McBride's conduct immediately
29  after the collision but before Plaintiff smashed him in the head with a
30  hatchet. They stated that McBride was continuing his assault on
31  Rayshawn Neely ("Rayshawn"); yelling that he was "sent to take
32  [Rayshawn] home; that "I am God. I am Jesus. I was sent here to take
33  all the niggers to heaven"; that "all niggers need to die"; "death to all
34  niggers"; and "I will kill you all."
35  c.) Nelson, Nicholas, Ginger, and Tonya each testified under oath that,
36  subsequent to McBride's expression of deadly intent in "2.)b.)"; McBride
37  grabbed Tonya in a "bear hug" and was escalating force against her
38  rapidly. Plaintiff loudly warned McBride 3 times to release Tonya.

McBride yelled, "I'll kill you all"; then Plaintiff used his camping hatchet with force 3 times on McBride's head in defense of Tonya

d.) Fresno County Sheriff's Officer Lyman testified under oath that, when officers arrived on the scene, McBride yelled "I did it! Get off of me! I'll kill you all!"

e.) Laboratory analysis of the marijuana smoked by Plaintiff and McBride prior to the incident revealed that there was "no substance in the plant material other than the active ingredient in marijuana."

f.) Blood was drawn from McBride at the hospital immediately after the incident. Tests on the blood were negative for every drug except for marijuana.

g.) McBride admitted to Jeff Stricker ("Stricker") that he "did it"; and when Stricker asked McBride whether he hit the truck on purpose and tried to kill Rayshawn, McBride responded in the affirmative, and explained that he did so because Rayshawn was Illuminati, and expressed remorse

h.) McBride admitted during his sworn testimony that he told Stricker that he "hit the truck on purpose and tried to kill Rayshawn." He denied doing it because Rayshawn was black, but agreed he did it because Rayshawn was Illuminati. He confessed to having Illuminati delusions long before having met Plaintiff.

i.) Plaintiff was found by law enforcement at the scene to have used justified force in defense of others; was cleared of any wrongdoing in the incident; and was released without any charges or reprimands.

Plaintiff avers that Defendants Theodor VonKurnatowski ("Defendant TV"); and Brian Monarch (Collectively, "Defendants") acquired knowledge of these facts through news reports and public records prior to the events hereafter described, or in the alternative, that Defendants acquired knowledge of these facts prior to having made the slanderous statements or incitements and intentional infliction of emotional distress hereafter described.

**INITIAL DEEPFAKE INFRINGEMENTS**

2.) On or about October 1, 2021, Defendants Theodor VonKurnatowski ("Defendant TV"); and Brian Monarch (Collectively, "Defendants") met with each other, and agreed to act in concert and to aid and abet each other in wilfully infringing on Plaintiff's copyrighted spoken words and dramatic works described in " 14 " below, for commercial purposes, by

4

copying and publishing Plaintiff's spoken words and dramatic work "Smash, Smash, SUH-MASH" onto various social media platforms to generate revenues through the sale of advertisements made by the copying and display of the works; and agreed that Defendant TV would thereafter incite his fans to threaten and intimidate Plaintiff out of litigating to vindicate his copyrights. Pursuant to this agreement, Brian Monarch, aided by Theodor VonKurnatowski, published a motion picture derivative of Plaintiff's spoken words and dramatic work "Smash, Smash, SUH-MASH!", without Plaintiff's permission, on the monetized YouTube channel, "Brian Monarch": in which they superimposed Theodor VonKurnatowski's face onto Plaintiff's February 1, 2013 performance. Plaintiff's spoken words and dramatic works are clearly copied and displayed in their original form, with Defendant TV's face exactly copying Plaintiff's entire performance: word for word and expression for expression. ("The Initial Deepfake") The Initial Deepfake received views, and was thereby displayed on YouTube. The Initial Deepfake on YouTube is annexed hereto from its URL: https://youtu.be/o4CCVEwks3c. To this date, the proceeds of this agreement have not been fully distributed, but revenue continues to be produced pursuant to the torts aided and abetted by each party to this agreement.

3.) On or about March 6, 2022 Defendant TV republished the Initial Deepfake on his monetized Instagram, pursuant to the agreement in "2". It has received views, and thereby displayed Plaintiff's spoken words and dramatic work "Smash, Smash, SUH-MASH" on Instagram to generate revenues through the sale of advertisements made by the copying and display of the works. The video on Instagram is annexed hereto from its URL: https://instagram.com/p/CaqLPeRDhp-/

4.) On or about June 13, 2022 Defendant TV republished the Initial Deepfake on his monetized TikTok, pursuant to the agreement in "2". It has received views, and thereby displayed Plaintiff's spoken words and dramatic work "Smash, Smash, SUH-MASH" on TikTok to generate revenues through the sale of advertisements made by the copying and display of the works. The video on Instagram is annexed hereto from its URL: https://tiktok.com/@TheoVon/Video/7108847165212020014?is_copy_url= 1&is_from_webapp=v1&lang=en

1    5.) On August 13, 2022, Plaintiff sent a letter to Defendant TV via
2    email, requesting Defendant TV to permanently remove and cease
3    broadcasting the Video. The letter specifically stated:
4    "Mr. Von:
5    It has recently come to my attention that you have republished a video
6    of me; but with your face superimposed over mine. I am told that you've
7    published this video on Instagram and TikTok.
8    This is to notify you that any such republished videos are in violation of
9    my right of publicity. California Civil Code Section 3344 provides that I
10   have a right to recover the gross revenue from your unauthorized
11   monetization of my voice and likeness. I urge you to consider the legal
12   ramifications of a similar situation:
13   How do you think Marvel would legally respond if you edited your face
14   onto Spiderman and republished the movie "Spiderman" on your
15   channel, monetized?
16   Additionally, your aforementioned videos are infringing on my
17   copyright in my performance of the interview contained therein. Strikes
18   under the Digital Millennium Copyright Act could affect your ability to
19   monetize videos in the future.
20   I hereby request that you remove any such offending videos from all
21   platforms; that you turn over all of the monetization revenue therefrom,
22   which I am entitled to under Cal. Civ. Code 3344, to a fundraiser of my
23   choosing; and that you kindly refrain from violating my right of
24   publicity in the future.
25   I would prefer to resolve this quickly and amicably.
26   Very Truly,
27   /s/
28   Caleb L. McGillvary
29   a/k/a "Kai the Hitchhiker"
30   Date: 8/13/22"
31
32   **INITIAL COMPLAINT AND RETALIATION THEREFOR**
33   6.) On or about November 21, 2022, Plaintiff Caleb L. McGillvary
34   ("Plaintiff") sent Defendant TV Theodor VonKurnatowski ("Defendant
35   TV") a settlement offer in a previous matter, in writing. Affixed to this
36   letter was a copyright notice and an explicit statement that Plaintiff
37   reserved all his rights therein and that the information contained

1   therein was confidential and not for publication nor broadcast. This
2   letter is incorporated by reference and attached hereto as Exhibit _A_
3   7.) On or about January 25, 2023, as conduct in furtherance of the
4   conspiracy in "_2_", while the proceeds of the conspiracy had not yet
5   been fully distributed, Defendant TV filmed and published a motion
6   picture work on his YouTube channel; which is derivative of, and in
7   which he reads from and thereby displays and republishes, the letter in
8   "6" to generate revenues through the sale of advertisements made by
9   the copying and display of the work. In this video, Defendant TV
10  indicates that he is being sued by Plaintiff, and for this reason he
11  incites viewers of the video to bully, sexually harass, and/or threaten or
12  commit sexual violence against Plaintiff and thereby intentionally
13  cause emotional distress to him, by stating to the viewers of the video
14  that Plaintiff is a "kind of dude that would just, you know, give you the
15  skirt off his back, you know, or whatever." Defendant TV's followers and
16  subscribers thereafter did, in fact, harass and threaten Plaintiff in a
17  sexual way; and bully him; going so far as to credibly threaten anal rape
18  against Plaintiff and "pay[ing] his cell mate to fuck him." The
19  Defamatory video received views, and was thereby displayed on
20  YouTube; and its comments are incorporated by reference herein from
21  the URL "https://youtube.com/watch?v=GZdLINF94LY"
22  8.) On January 30, 2023, Plaintiff sent Defendant TV a retraction letter,
23  asking Defendant TV to retract the statements described in "7". He sent
24  this letter to the same address to which he sent the letter in "6"; using
25  the same institutional mailing system to send it via USPS first class
26  mail. A copy of the retraction letter is attached at Exhibit _B_.
27  Defendant TV never retracted nor corrected his statements in response
28  to this demand.
29
30  **SECOND DEEPFAKE INFRINGEMENT**
31  9.) On or about February 22, 2023, as conduct in furtherance of the
32  conspiracy in "_2_", while the proceeds of the conspiracy had not yet
33  been fully distributed, Defendant Brian Monarch created a second
34  deepfake video infringing upon Plaintiff's rights ("Arnie Deepfake") on
35  Defendant Brian Monarch's YouTube account "Brian Monarch"; with
36  the intention of causing and aiding the causing of emotional distress to
37  Plaintiff; through a pattern of sexual harassment and intimidation in
38  republishing threats of sexual violence and death incited by the

1    Defamatory Video; and to wilfully infringe upon Plaintiff's copyright in
2    his performance and spoken words "Smash, Smash, SUH-MASH!"
3    underlying the motion picture work which the Arnie Deepfake is an
4    unauthorized derivation of; for a commercial purpose of selling
5    advertisements and increasing lifetime value of subscribers; and to
6    damage or deprive Plaintiff in or of his revenues from his Dramatic
7    Work and Spoken Words.; embodied by sales of advertisements and
8    increase of lifetime value of subscribers, which directly and/or indirectly
9    resulted from the copying of said works and are thus infringer's profits
10    as defined by 17 U.S.C. 504(b)

11    10.) On or about February 22, 2023, as conduct in furtherance of the
12    conspiracy in " 2 "; while the proceeds of the conspiracy had not yet
13    been fully distributed, Defendant Brian Monarch published the Arnie
14    Deepfake on the YouTube "Brian Monarch"; in which Arnold
15    Schwarzenegger's face and voice are superimposed upon Plaintiff's
16    performance in the Original Video, displaying copyright protected
17    spoken words and dramatic work "Smash, Smash, SUH-MASH!"; in
18    their entirety, and wilfully copying same for a commercial purpose of
19    selling advertisements and increasing lifetime value of subscribers; and
20    to damage or deprive Plaintiff in or of his revenues from his Dramatic
21    Work and Spoken Words.; embodied by sales of advertisements and
22    increase of lifetime value of subscribers, which directly and/or indirectly
23    resulted from the copying of said works and are thus infringer's profits
24    as defined by 17 U.S.C. 504(b). Defendants never received permission
25    Plaintiff to make derivative works from his copyrighted dramatic work
26    nor spoken words. The Arnie Deepfake received views, and was thereby
27    displayed on YouTube; and is incorporated by reference herein from its
28    URL:
29    https://youtube.com/shorts/FZvrpt0r3I8?feature=share
30
31    **THIRD RETALIATION VIDEO**
32    11.) On or about September 12, 2023; as conduct in furtherance of the
33    conspiracy in " 2 ", while the proceeds of the conspiracy had not yet
34    been fully distributed; Defendant TV made a video and published it on
35    his YouTube Channel ("The Petrousian Video"). In The Petrousian
36    Video, Defendant TV specifically referenced this civil action and
37    Plaintiff, then proceeded to accuse Plaintiff of multiple murders which
38    he never committed, knowing the falsity of the statement at the time it

1    was made or exhibiting constitutional malice, that is, with reckless
2    disregard for the truth of the matter pleaded in "1" which was known to
3    Defendants prior to the time the statements were made, stating
4    verbatim in regards to Plaintiff: "He did a few murders". The
5    Petrousian video received views, and was thereby displayed on
6    YouTube; and is annexed hereto and incorporated by reference herein
7    from its URL:
8    https://youtube.com/watch?v=UYqY6tmxfqU
9    12.) On or about September 12, 2023, Defendant TV's Viewers and
10    fans, as a result of both Defendant TV's video incorporated by reference
11    herein from the URL "https://youtube.com/watch?v=GZdLINF94LY",,
12    and the video incorporated by reference herein from its URL:
13    "https://youtube.com/watch?v=UYqY6tmxfqU"; began to comment at
14    and message Plaintiff as a direct result of the incitement made by
15    Defendant TV in his video described above in "11". Defendant TV has
16    control over which comments are displayed on his YouTube videos. The
17    process by which comments are published is that a person writes the
18    comment, clicks a button, and the comment is published to Defendant
19    TV for approval. Defendant TV must then either disprove the comment
20    and thereby delete it; or approve the comment which thereby
21    republishes it onto the Video.
22    13.) On September 15, 2023, Plaintiff sent Defendant TV a retraction
23    letter, asking Defendant TV to retract the slanderous statements
24    described in "11" and "12". He sent this letter to the same address to
25    which he sent the letter in "8"; using the same institutional mailing
26    system to send it via USPS first class mail. A copy of the retraction
27    letter is attached at Exhibit ▐. Defendant TV never retracted nor
28    corrected his slanderous statements in response to this demand.
29
30    ## COUNT 1: COPYRIGHT INFRINGEMENT
31    **Plaintiff's Ownership of Copyright**
32    14.) Plaintiff is the author of the dramatic work and words spoken in
33    the Original video described in "1"; and the legal title to said dramatic
34    work and words spoken vested in Plaintiff at the time the Original
35    Video was made on February 1, 2013. Plaintiff has never assigned nor
36    transferred title to his copyrights. In accordance with 17 USC 411,
37    Plaintiff has registered this work with the Copyright Office on January

20 and February 6, 2023; copies of the registration certificates are incorporated by reference herein as Exhibit D.

Plaintiff registered his copyright to the dramatic work "Smash, Smash, SUH-MASH!" underlying the Original Video on February 6, 2023. A copy of his certificate of registration of this dramatic work PA 2-398-664 is incorporated by reference herein.

Plaintiff registered his copyright to the spoken words of the "Smash, Smash, SUH-MASH!" interview underlying the Original Video on January 20, 2023. A copy of his certificate of registration of these spoken words PA 2-398-110 is incorporated by reference herein.

15.) Plaintiff is the author of the literary work described in "8"; and the legal title to said literary work vested in Plaintiff at the time the work was made on November 21, 2022. Plaintiff has filed for registration of this work with the Copyright Office on March 26, 2023; a copy of the registration certificate is incorporated by reference herein as Exhibit E.

**Defendant TV's Infringing Initial Deepfake**

16.) Defendant TV Defendant TV's Initial Deepfake described in "2"-"4", is an unauthorized derivative work of Plaintiff's spoken words described in "14" and dramatic work described in "4" underlying the Original video described in "1"; which wilfully copied, republished, and made a derivative work from Plaintiff's copyright protected work without Plaintiff's permission, infringing upon Plaintiff's exclusive rights under 17 USC 106-113 to copy, publish, and make derivative works from his dramatic work and spoken words, in violation of 17 USC 501.

17.) Defendant TV's wilful infringement and unauthorized use has had a negative effect on the potential market for or value of Plaintiff's work; by creating the false impression that Defendant TV is the author of the dramatic work and spoken words; and also by subsequent incitement of viewers of the Initial Deepfake by Defendant TV to harass or intimidate Plaintiff to dissuade him from enforcing his copyrights, thereby creating the impression in the potential market for Plaintiff's work that the work may be used without payment or permission; whereas before, Plaintiff was commanding $14,000 per use of his work in a YouTube video as described in "19"-"29". Plaintiff was deprived of his fee for use of copyright and revenues for use of the copyright by Defendant TV, and

1  Defendant TV was unjustly enriched by the revenues of the copyright
2  material and lifetime value of the subscribers gained thereby, which are
3  described in "18"-"29".
4  18.) Defendant TV's use described in "24" of Plaintiff's copyright
5  protected work described in "14" was intended for commercial gain as
6  described in "2"-"4" and "19"-"29"; in the form of the monetization
7  partnership and enterprise therein described; which shows that a
8  meaningful likelihood of future harm exists from Defendant TV's
9  continued commercial use and unjust enrichment and deprivation of
10  Plaintiff's entitled revenues under 17 USC 504.
11  19.) Defendant TV has unjustly enriched himself using plaintiff's
12  copyright protected spoken words and dramatic work "Smash, Smash,
13  SUH-MASH!" to sell the services of pay per click and pay per view
14  advertisements on his videos and channels, and to advertise his
15  monetized video and channel pursuant to the monetization
16  partnerships described in "24"-"26" below; thereby acquiring direct
17  proceeds through monetization; and indirect proceeds through the
18  lifetime value of new subscribers; produced by said advertisements, on
19  his YouTube, Instagram, and TikTok channels. The lifetime value of
20  these new subscribers represents infringer's profits as defined by 17
21  U.S.C. 504(b).
22  20.) Defendant TV's subscribers on his YouTube Channel "Theo Von"
23  increased from 632,000 in May of 2020, resulting from Defendant TV's
24  use of plaintiff's copyright protected spoken words and dramatic work
25  "Smash, Smash, SUH-MASH!"; to advertise his video and channel for
26  the purpose of gaining subscribers.
27  21.) Defendant TV also had a commensurate increase in subscribers or
28  followers to his TikTok and Instagram accounts. This increase resulted
29  from Defendant TV's use of plaintiff's copyright protected spoken words
30  and dramatic work "Smash, Smash, SUH-MASH!"; to advertise his
31  video and channel for the purpose of gaining subscribers.
32  22.) The lifetime value of each of Defendant TV's YouTube subscribers
33  is calculated by the following formula:
34  [[(Channel total video views per year)/(Average number of subscribers
35  per year)]/[(Average number of subscribers per 1000
36  views)/1000]]x[(California average life expectancy)-(Defendant TV's age
37  in years at time of publishing)]x(monetization rate)]= Subscriber
38  Lifetime Value

23.) The lifetime value of each of Defendant TV's Instagram and TikTok subscribers is calculated with the same formula as "22"

24.) On a date and time, and at a location, which will be ascertained with certainty upon discovery, Defendant TV entered into an agreement with YouTube and/or Google Adsense on terms which will be ascertained with certainty upon discovery, which is believed on information to be a monetization partnership with YouTube and/or Google AdSense; in which Defendant TV sells the service of providing advertisements and for that service is paid approximately an estimated $3.40 per 1000 video views on each of his monetized videos. This money is generated from that advertising, whereby third parties purchase ads which are played before, during, and after videos; which are broadcast to citizens of all 50 states and internationally. Each of these third parties pay YouTube and/or Google from their home state; who in turn apportion Defendant TV an amount of revenue from every thousand of these transactions. This amount is transferred from YouTube and/or Google to Defendant TV's bank account; from which he invests the proceeds in real estate, personalty, and/or other enterprises.

25.) Defendant TV has a similar partnership to that described in "24" with Instagram

26.) Defendant TV has a similar partnership to that described in "24" with TikTok

27.) According to socialblade, Defendant TV's YouTube channel has 182,725,133 total video views over the past 16 years; or about an average of 11,300,000 per year. With an average of about 75,000 subscribers, this makes for an average of 151 views per subscriber per year; at an estimated average rate of $0.034 per 1000 views. California's average life expectancy is believed to be 74 years, and Defendant TV looks about 40; so the estimated lifetime value of Defendant TV's 568,000 new subscribers, resulting from his conduct pleaded in "24" and "16" above and elsewhere in this complaint, is $99,147.81. The lifetime value of these new subscribers represents infringer's profits as defined by 17 U.S.C. 504(b).

28.) Defendant TV's TikTok subscriber increase resulted in a commensurate lifetime value to that pleaded in "27"; an estimated $99,147.81. The lifetime value of these new subscribers represents infringer's profits as defined by 17 U.S.C. 504(b).

29.) Defendant TV's Instagram subscriber increase resulted in a commensurate lifetime value to that pleaded in "27"; an estimated $99,147.81. The lifetime value of these new subscribers represents infringer's profits as defined by 17 U.S.C. 504(b).

**Defendant TV's Infringing Defamatory Video**

30.) Defendant TV's Defamatory Video described in "7", is an unauthorized derivative work of Plaintiff's literary work described in "15"; which copied, republished, and made a derivative work from Plaintiff's copyright protected work without Plaintiff's permission, infringing upon Plaintiff's exclusive rights to copy, publish, and make derivative works from his literary work.

31.) Defendant TV's infringement and unauthorized use has had a negative effect on the potential market for or value of Plaintiff's work; by disparaging the work through the false and defamatory statement that its author, Plaintiff, is "the type of dude who would give you the skirt off his back"; and also by subsequent incitement of viewers of the Defamatory Video by Defendant TV to harass or intimidate Plaintiff to dissuade him from enforcing his copyrights, thereby creating the impression in the potential market for Plaintiff's work that the work may be used without payment or permission; whereas before, Plaintiff was commanding $14,000 per use of his works in a YouTube video as described in "18"-"29". Plaintiff was deprived of his fee for use of copyright and revenues for use of the copyright by Defendant TV, and Defendant TV was unjustly enriched by the revenues of the copyright material and lifetime value of the subscribers gained thereby, which are described in "18"-"29".

32.) Defendant TV's use described in "7" of Plaintiff's copyright protected work described in "15" was intended for commercial gain as described in "2"-"7", "18"-"29" and "31"; in the form of the monetization partnership and enterprise therein described; which shows that a meaningful likelihood of future harm exists from Defendant TV's continued commercial use and unjust enrichment and deprivation of Plaintiff's entitled revenues.

**Defendant TV's Infringing Arnie Deepfake**

33.) Defendant TV's Arnie Deepfake Video described in "9"-"10" above, is an unauthorized derivative work of Plaintiff's Dramatic Work described in "14" above and Spoken Words described in "14" above, underlying his Original video described in "1"; which copied, republished, and made a derivative work from Plaintiff's copyright protected works without Plaintiff's permission, infringing upon Plaintiff's exclusive rights to copy, publish, and make derivative works from his dramatic work and spoken words.

34.) Defendant TV's infringement and unauthorized use has had a negative effect on the potential market for or value of Plaintiff's work; by creating the false impression plaintiff is not the rightful author of the dramatic work and spoken words; and also by subsequent incitement of viewers of the Arnie Deepfake Video by Defendant TV to harass or intimidate Plaintiff to dissuade him from enforcing his copyrights, thereby creating the impression in the potential market for Plaintiff's work that the work may be used without payment or permission; whereas before, Plaintiff was commanding $14,000 per use of his work in a YouTube video as described in "18"-"29". Plaintiff was deprived of his fee for use of copyright and revenues for use of the copyright by Defendant TV, and Defendant TV was unjustly enriched by the revenues of the copyright material and lifetime value of the subscribers gained thereby, which are described in "18"-"29".

35.) Defendant TV's use described in "10" of Plaintiff's copyright protected work described in "14" was intended for commercial gain as described in "9"-"10", "18"-"29" and "34"; in the form of the monetization partnership and enterprise therein described; which shows that a meaningful likelihood of future harm exists from Defendant TV's continued commercial use and unjust enrichment and deprivation of Plaintiff's entitled revenues.

**COUNT 2: DEFAMATION**

36.) Plaintiff repleads "11" as publication by Defendant TV of the provably false statement that Plaintiff "did a few murders"; which itself was an explicit and provably false statement that Plaintiff had committed multiple murders; and which was reasonably understood by viewers of the video; as evidenced by comments incorporated by reference from the URL "https://youtube.com/watch?v=UYqY6tmxfqU"

and also by those listed specifically below in "42"-"48"; to imply the provably false statement that Plaintiff is a serial killer. The truth of the matter is that Plaintiff has not committed multiple murders, nor is he a serial killer. Defendant TV knew the falsity of his explicit and implicit false statements of fact at the time he made them, or had a reckless disregard for the truth of the matter: and so had constitutional malice against Plaintiff when he made the statements. The explicit and implicit defamatory statements accused Plaintiff of criminal conduct of serial killing, which false accusations constitute slander per se.

37.) Defendant TV made the statements in "11" after having watched a documentary about Plaintiff and having read information about Plaintiff published online that made him aware and knowing of the statement's falsity, or with reckless disregard for its falsity, and knowing and intending that the false statement would expose Plaintiff to hatred, contempt, ridicule, or obloquy; and/or that it would cause him to be shunned or avoided' and/or that they would injure Plaintiff in his occupation as a performer. That the statements did indeed have this effect is evidenced by comments from viewers of the video incorporated by reference from the URL "https://youtube.com/watch?v=UYqY6tmxfgU"

38.) Defendant TV's conduct in "36"-"38" harmed Plaintiff through causing general damages and emotional distress and mental anguish, by exposing Plaintiff to hatred, contempt, ridicule, or obloquy; and/or that it would cause him to be shunned or avoided'. Plaintiff seeks general damages of $1,000,000.00 against Defendant TV for slander per se as pleaded in "36"-"38".

## COUNT 3: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

39.) Defendant TV admits in his video incorporated by reference herein from the URL "https://youtube.com/watch?v=GZdLINF94LY"; that he had watched a documentary film in which Plaintiff is depicted describing being violently raped as a teenager. Defendant TV thereafter researched Plaintiff and was made aware from information published online, that Plaintiff had a diagnosis of Post Traumatic Stress Disorder (PTSD). The circumstances causing Plaintiff's diagnosis of PTSD, and the fact of Plaintiff having a diagnosis PTSD, were thus admittedly known to Defendant TV prior to him making the video incorporated by reference herein from the URL

1   "https://youtube.com/watch?v=GZdLINF94LY"; and prior to him making
2   the video incorporated by reference from the URL
3   "https://youtube.com/watch?v=UYqY6tmxfqU".

4   <u>40</u>.) On or about September 12, 2023, Defendant TV's Viewers and
5   fans, as a result of Defendant TV's video in " <u>6</u> "-" <u>13</u> "; began to
6   comment at and message Plaintiff as a direct result of the incitement
7   made by Defendant TV in his videos described above in " <u>7 11</u> ". Defendant
8   TV has control over which comments are displayed on his YouTube
9   videos. The process by which comments are published is that a person
10   writes the comment, clicks a button, and the comment is published to
11   Defendant TV for approval. Defendant TV must then either disprove
12   the comment and thereby delete it; or approve the comment which
13   thereby republishes it onto the Video.

14   <u>41</u>.) Defendant TV made and published the videos in " <u>7</u> " and " <u>11</u> ";
15   and the statements pleaded in " <u>7</u> "-" <u>12</u> " made therein; and
16   republished intimidating or threatening comments directed at Plaintiff,
17   in an attempt to intimidate or threaten Plaintiff by creating a climate of
18   sexual violence and harassment against Plaintiff which would affect his
19   custody status and/or safety at NJ State Prison, with the intention of
20   causing emotional distress against Plaintiff by triggering Plaintiff's
21   PTSD.

22   <u>42</u>.) As conduct in furtherance of the conspiracy in " <u>2</u> ", while the
23   proceeds of the conspiracy had not yet been fully distributed, Defendant
24   TV republished the defamatory and harassive and/or threatening
25   statement, "This is what mentally ill obsessive murderers who are
26   locked in a cage – where they belong – do all day. Theo is probably the
27   most exciting thing that has happened to the fkin psycho since he got
28   raped in the showers last month", incorporated by reference herein from
29   the   URL,
30   "https://youtube.com/watch?v=UYqY6tmxfqU&lc=UgwPQHsipZ1b6c0K
31   wgN4AaABAg"; which had the implied meaning reasonably understood
32   to be a threat of rape "in the showers" against Plaintiff; in an attempt to
33   intimidate or threaten Plaintiff, directly and by creating a reasonable
34   possibility of inciting a climate of sexual violence and harassment
35   against Plaintiff which would affect his custody status and/or safety at
36   NJ State Prison, with the intention of causing emotional distress
37   against Plaintiff by triggering Plaintiff's PTSD.

43.) As conduct in furtherance of the conspiracy in "2", while the proceeds of the conspiracy had not yet been fully distributed, Defendant TV republished the defamatory and harassive and/or threatening statement, "Hopefully another inmate deals with him and puts an end to this for good. This pisses me off, he's in there harassing Theo who did absolutely nothing to him on the taxpayer's dime. Fingers crossed Kai gets dealt with prison style", incorporated by reference herein from the URL, "https://youtube.com/watch?v=UYqY6tmxfqU&lc=UgywQU-kRHBKrF5zfQ94AaABAg"; which had the implied meaning reasonably understood to be a threat of death by gang violence against Plaintiff, the reference to "fingers crossed" being an implicit reference to gang hand signs; in an attempt to intimidate or threaten Plaintiff, directly and by creating a reasonable possibility of inciting a climate of sexual violence and harassment against Plaintiff which would affect his custody status and/or safety at NJ State Prison, with the intention of causing emotional distress against Plaintiff by triggering Plaintiff's PTSD.

44.) As conduct in furtherance of the conspiracy in "2", while the proceeds of the conspiracy had not yet been fully distributed, Defendant TV republished the defamatory and harassive and/or threatening statement, "I'd be writing a lot of letters too if it kept wieners out of my butt", incorporated by reference herein from the URL, "https://youtube.com/watch?v=UYqY6tmxfqU&lc=Ugxs3gsJMB9G6EnNZ6d4AaABAg"; which had the implied meaning reasonably understood to be a threat of anal rape against Plaintiff; in an attempt to intimidate or threaten Plaintiff, directly and by creating a reasonable possibility of inciting a climate of sexual violence and harassment against Plaintiff which would affect his custody status and/or safety at NJ State Prison, with the intention of causing emotional distress against Plaintiff by triggering Plaintiff's PTSD.

45.) As conduct in furtherance of the conspiracy in "2", while the proceeds of the conspiracy had not yet been fully distributed, Defendant TV republished the defamatory and harassive and/or threatening statement, "If Kai is mysteriously found 'unconscious' in his cell, we know who did it, gang gang", incorporated by reference herein from the URL, "https://youtube.com/watch?v=UYqY6tmxfqU&lc=UgyxU8dvh8X5bqZDjwJAaABAg"; which had the implied meaning reasonably understood to

17

be a threat of death by gang violence against Plaintiff; in an attempt to intimidate or threaten Plaintiff, directly and by creating a reasonable possibility of inciting a climate of sexual violence and harassment against Plaintiff which would affect his custody status and/or safety at NJ State Prison, with the intention of causing emotional distress against Plaintiff by triggering Plaintiff's PTSD.

46.) As conduct in furtherance of the conspiracy in "2", while the proceeds of the conspiracy had not yet been fully distributed, Defendant TV republished the defamatory and harassive and/or threatening statement, "'Persuade' a fellow inmate to smash smash saaamaaash his teeth out", incorporated by reference herein from the URL, "https://youtube.com/watch?v=UYqY6tmxfqU&lc=UgyYHUhknGdHpaC vkEl4AaABAg"; which had the implied meaning reasonably understood to be a threat of physical striking and deadly assault of Plaintiff; in an attempt to intimidate or threaten Plaintiff, directly and by creating a reasonable possibility of inciting a climate of sexual violence and harassment against Plaintiff which would affect his custody status and/or safety at NJ State Prison, with the intention of causing emotional distress against Plaintiff by triggering Plaintiff's PTSD.

47.) As conduct in furtherance of the conspiracy in "2", while the proceeds of the conspiracy had not yet been fully distributed, Defendant TV republished the defamatory and harassive and/or threatening statement, "If we send kai enough hate mail he might smash himself", incorporated by reference herein from the URL, "https://youtube.com/watch?v=UYqY6tmxfqU&lc=UgwLjiq18yl3ylgrx6B 4AaABAg"; which had the implied meaning reasonably understood to be a threat of overwhelming Plaintiff with hate mail with the specific, wilful, knowing intention of inducing him to commit suicide; in an attempt to intimidate or threaten Plaintiff, directly and by creating a reasonable possibility of inciting a climate of sexual violence and harassment against Plaintiff which would affect his custody status and/or safety at NJ State Prison, with the intention of causing emotional distress against Plaintiff by triggering Plaintiff's PTSD.

48.) As conduct in furtherance of the conspiracy in "2", while the proceeds of the conspiracy had not yet been fully distributed, Defendant TV republished the defamatory and harassive and/or threatening statement, "Suing Theo is such an L. Hope Kai is enjoying getting sa- mashed in prison", incorporated by reference herein from the URL,

1    "https://youtube.com/watch?v=UYqY6tmxfqU&lc=UgzbdKg47TGG_tRg
2    YNp4AaABAg"; which had the implied meaning reasonably understood
3    to be a threat of physical striking and deadly assault of Plaintiff; in an
4    attempt to intimidate or threaten Plaintiff, directly and by creating a
5    reasonable possibility of inciting a climate of sexual violence and
6    harassment against Plaintiff which would affect his custody status
7    and/or safety at NJ State Prison, with the intention of causing
8    emotional distress against Plaintiff by triggering Plaintiff's PTSD.
9    49.) Plaintiff repleads "7"-"12"and "39"-"48"as showing Defendant
10   TV's extreme and outrageous conduct of inciting sexual harassment and
11   threats of sexual violence against Plaintiff, and publishing and
12   republishing sexual harassment and threats of death and gang rape,
13   with the intention of causing, or reckless disregard of the probability of
14   causing, emotional distress against Plaintiff triggering rape-related
15   PTSD and thereby harassing or intimidating him in retaliation for; and
16   attempt to hinder, impede, or obstruct, Plaintiff's lawsuit.
17   50.) Plaintiff has suffered severe or extreme emotional distress
18   proximately caused by Defendant TV's conduct triggering Plaintiff's
19   PTSD and thereby causing anguish, anxiety, panic attacks, flashbacks,
20   sleep disturbances, and nightmares; for which Plaintiff has needed to
21   seek help from a Mental Health Professional who has documented these
22   symptoms and diagnosed him with acutely triggered PTSD, which was
23   triggered by Defendant TV's conduct.
24   51.) Plaintiff requests compensatory and general damages of
25   $1,000,000.00 against defendant for intentional infliction of emotional
26   distress.
27
28                    Punitive Damages
29   52.) Plaintiff repleads "2"-"51" as showing that Defendant TV, aided
30   and abetted by coconspirator Brian Monarch, and in furtherance of the
31   conspiracy described in "2"; engaged in knowing and intentional
32   tortious and criminal conduct actuated by malice, both constitutional
33   and in the truest sense of the word, with the purpose of subverting a
34   Federal Official Proceeding through bullying Plaintiff and the woman
35   whose life he saved and whom Plaintiff obviously by virtue of such act
36   has an interest in the welfare of; including with credible threats of anal
37   rape and violence designed to trigger Plaintiff's PTSD. Defendant's
38   conduct threatens to undermine the Authority of the Federal Courts

with sexually violent mob-lynchings of plaintiffs who petition the
government for redress, and cannot be tolerated in a society ruled by
Law and Order. The Court is therefore respectfully urged to award
Plaintiff punitive damages against Defendants for the sake of example
deterring others who might incite sexual harassment or sexual violence
as a means to dissuade someone from petitioning the government for
redress; and by way of punishing Defendants for their own malicious
conduct in doing so. To this end, Plaintiff requests five times
compensatory damages in punitive damages to reflect the severity of,
and need for effective deterrent against, the conduct of attempting to
subvert Federal Judicial Process with sexual violence.

## LIBERAL CONSTRUCTION OF PRO SE PLEADING

53.) Pursuant to the Supreme Court and Ninth Circuit mandates to
liberally construe pro se pleadings, if any paragraph of this complaint
pleaded as an element of one claim substantiates or bolsters any other
claim; then plaintiff adopts it by reference and repleads that paragraph
in support of each claim it substantiates or bolsters.

IV. PRAYER FOR RELIEF

WHEREFORE Plaintiff respectfully prays that this Court enter judgment:

54.) Granting Plaintiff a declaration that the acts of Defendants described herein are unlawful and tortious; and that the Initial Deepfake described in "2"-"4"; the Defamatory video described in "7", and the Arnie Deepfake described in "9"-"10" each and all infringe upon Plaintiff's exclusive copyrights to the underlying works pleaded herein;

55.) A preliminary and permanent injunction, under 17 U.S.C. 501, ordering Defendants to remove the Initial Deepfake Video described in "2"-"4" from broadcast; and to cease using Plaintiff's marks, image, or likeness to market Defendants' products; on all platforms;

56.) A preliminary and permanent injunction, under 17 U.S.C. 501, ordering Defendants to remove the Defamatory Video described in "7" from broadcast on all platforms; and to cease using Plaintiff's marks, image, or likeness to market Defendants' products on all platforms;

57.) A preliminary and permanent injunction, under 17 U.S.C. 501, ordering Defendants to remove the Arnie Deepfake described in "9"-"10" from broadcast on all platforms;

58.) Granting plaintiff statutory damages in the amount of $297,443.43, which are gross revenues and infringer's profits to which Plaintiff is entitled under 17 U.S.C. 504(b); against Defendants, jointly and severally for the Copyright Act violations described in "16"-"35";

59.) Granting plaintiff restitution and/or compensatory damages against Defendants, jointly and severally, in the amount of gross revenues of broadcast of the Initial Deepfake Video in "2"-"4", the Defamatory Video in "7", and the Arnie Deepfake in "9-10"; and the lifetime value of the subscribers represented by the views thereof; for the Copyright Infringement in "16"-"35"; which are the gross revenues and infringer's profits to which Plaintiff is entitled under 17 U.S.C. 504(b);

60.) Granting plaintiff restitution and/or compensatory damages against Defendants, jointly and severally, in the amount of gross revenues of broadcast of the Arnie Deepfake in "10"; and the lifetime value of the subscribers represented by the views thereof; for the Copyright Infringement in "16"-"35", which are the gross revenues

1  and infringer's profits to which Plaintiff is entitled under 17 U.S.C.
2  504(b);
3  61.) Granting plaintiff restitution and/or compensatory damages
4  against Defendants, jointly and severally, in the amount of gross
5  revenues of broadcast of the Defamatory Video in "7"; and the lifetime
6  value of the subscribers represented by the views thereof; for the
7  Copyright Infringement in "16"-"35", which are the gross revenues
8  and infringer's profits to which Plaintiff is entitled under 17 U.S.C.
9  504(b);
10  62.) Granting plaintiff general damages against Defendants, jointly
11  and severally, in an amount not less than $1,000,000.00; for the
12  defamation in "36"-"38";
13  63.) Granting plaintiff compensatory and general damages against
14  Defendants, jointly and severally, in the amount of $1,000,000.00 for
15  the intentional infliction of emotional distress in "39"-"51";
16  64.) Plaintiff also seeks punitive damages in the amount of five times
17  statutory, compensatory, and general damages against Defendants,
18  jointly and severally;
19  65.) Plaintiff also seeks statutory damages under the Copyright Act
20  against Defendants, jointly and severally;
21  66.) Plaintiff also asks for any other relief this court deems just,
22  proper, and equitable.
23

1    I declare under penalty of perjury that all the documents attached
2  hereto are true and accurate copies of the originals.
3
4    I declare under penalty of perjury pursuant to 28 U.S.C. 1746 that
5  the foregoing statements are true and accurate to the best of my
6  knowledge and belief.
7
8  Executed this _8TH_ Day of _AUGUST_, 20_24_
9                                        Respectfully Submitted,
10
11
12                                        Caleb L. McGillvary, Pro se
13                                        #1222665/SBI#102317G NJSP
14                                        Po Box 861 Trenton, NJ 08625-0861

# Exhibit A

THIS MESSAGE IS PRIVATE & CONFIDENTIAL, NOT FOR PUBLICATION OR SALE
COPYRIGHT©2022 CALEB L. MCGILLVARY

CALEB L. MCGILLVARY
JAILHOUSE LAWYER #1222665/SBI #1023176
NJSP PO BOX 861
TRENTON, NJ 08625

NOVEMBER 21, 2022

THEODOR C. VONKURNATOWSKI
401 S. BARRINGTON AVE
LOS ANGELES, CA 90049
    RE: MCGILLVARY V. VONKURNATOWSKI
    U.S. DISTRICT COURT - CENTRAL DIST. OF CA
"THEO VON";
    I'VE JUST FILED A LAWSUIT AGAINST YOU BECAUSE OF
YOUR VIDEOS ABOUT ME. ANY DAY NOW, THE U.S. MARSHALLS
WILL KNOCK ON YOUR DOOR & HAND YOU A SUMMONS. IF YOU
TRY TO EVADE SUMMONS, THEY CAN ARREST YOU & CHARGE
YOU WITH CONTEMPT.
    IF YOU WANT TO SETTLE OUTSIDE OF COURT, NOW'S YOUR
CHANCE. CHECK OUT THE RETAINER FEES FOR YOUR LOCAL
LAWYERS. FACTOR IN THE APPEAL TO THE 9TH CIRCUIT.
PROBABLY $15,000 FOR THE DISTRICT COURT, $25,000 FOR
THE APPEAL.
    YOU'LL NEVER GET THAT MONEY BACK.
    I'LL SETTLE FOR WHAT MY COSTS ARE THUS FAR, WHICH
IS APPROXIMATELY $4,000; PLUS WHATEVER YOU MADE OFF
THOSE VIDEOS; BUT ONLY IF YOU TAKE THOSE VIDEOS
                    PAGE 1 OF 2

THIS MESSAGE IS PRIVATE & CONFIDENTIAL, NOT FOR PUBLICATION OR SALE
COPYRIGHT©2022 CALEB L. MCGILLVARY

ABOUT ME DOWN & PROMISE NOT TO MAKE ANY MORE ABOUT ME. IF YOU DO SO, & PUT YOUR PROMISE IN WRITING, I WILL WITHDRAW MY LAWSUIT & WE CAN GO OUR SEPERATE WAYS.

I THINK THIS OFFER IS VERY REASONABLE, ESPECIALLY CONSIDERING THE OUTRAGE I FELT WATCHING YOU TAKE CREDIT FOR MY ACTIONS IN SAVING THOSE PEOPLE.

HAVE A LOOK AT MY INITIAL COMPLAINT AGAINST YOU ON P.A.C.E.R. (PUBLIC ACCESS TO COURT ELECTRONIC RECORDS); BY SEARCHING YOUR NAME ON THE U.S. DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA'S WEBSITE.

I'M A JAILHOUSE LAWYER, SO IT REFLECTS MY +9 YEARS OF LITIGATION EXPERIENCE. ALL I DO IS STUDY LAW.

IF YOU DECIDE TO SETTLE BEFORE PAYING YOUR RETAINER FEES, PLEASE LET ME KNOW AS SOON AS POSSIBLE. IF NOT, SEE YOU IN COURT.

ALL THE BEST,
KAI THE HITCHHIKER

ENCL:
CC: FILE
    ALTERNATE ADDRESS

PAGE 2 OF 2

# Exhibit C

CALEB L. MCHILVARY, PRO SE
#1222665/SBI #1023176 NJSP
PO BOX 861 TRENTON, NJ 08625

SEPTEMBER 15, 2023

THEODOR VONKURNATOWSKI
4405 LEALAND AVE
NASHVILLE, TN 37204

RE: MCHILVARY V. VONKURNTOWSKI

DEAR MR. VONKURNATOWSKI:

PLEASE RETRACT & CORRECT YOUR SLANDEROUS
STATEMENT THAT I "DID A FEW MURDERS"
AND PUBLISH A RETRACTION VIDEO ADMITTING YOU'RE
WRONG. ALSO, PLEASE RETRACT & CORRECT THE
NUMEROUS SLANDEROUS COMMENTS WHICH YOU'VE
REPUBLISHED & CONTINUE TO REPUBLISH ON YOUR
YOUTUBE CHANNEL, INCLUDING BUT NOT LIMITED TO
THE COMMENTS THREATENING SEXUAL ASSAULT, ACCUSING
ME OF CRIMES I DIDN'T COMMIT, OR FALSELY STATING
SEXUAL CONDUCT ATTRIBUTED TO ME, INCLUDING
BUT NOT LIMITED TO THE COMMENTS ON:
https://youtu.be/UYqY6tmxfgU?si=bHZUFQGJxr9QGLgU
THE VIDEO YOU PUBLISHED ON YOUTUBE ON 9/12/23.
PLEASE PUBLISH A RETRACTION FOR EACH OF THOSE, WITH A
CORRECTION THAT THE LAW WOULD ALLOW ME TO USE
DEADLY FORCE AGAINST ANY MAN WHO ATTEMPTED SEXUAL ASSAULT

UPON ME & I WOULD, IN FACT, KILL ANY MAN WHO ATTEMPTED A SEXUAL ASSAULT UPON ME; & THAT I HAVE NEVER COMMITTED THE CRIMES WHICH SAID COMMENTS FALSELY ACCUSE ME OF; & THAT I AM A VIRILE HETEROSEXUAL MAN WITH BOUNDING SEXUAL CHARISMA RESERVED FOR THE LOVELY LADY I HAVE IN MY LIFE, A MAN WHO DOESN'T ENGAGE IN THE TYPE OF SEXUAL CONDUCT FALSELY ATTRIBUTED TO ME BY THE COMMENTS.

UNTIL YOU RETRACT YOUR SLANDEROUS STATEMENTS, & PUBLISH THE CORRECTIONS, MY GENEROUS OFFER OF SETTLEMENT IS OFF THE TABLE.

AND FOR GOD'S SAKE, GET YOURSELF TO A DRUG REHAB.

DATE: 9/15/23

WITH SOME REGARD,

CALEB L. MCGILLVARY
IN PROPRIA PERSONA

CALEB L. MCGILLVARY, PRO SE
#1222665/SBI #1023176 NJSP
PO BOX 861 TRENTON, NJ 08625

SEPTEMBER 15, 2023

THEODOR VONKURNATOWSKI
4405 LEALAND AVE
NASHVILLE, TN

RE: MCGILLVARY V. VONKURNATOWSKI

DEAR MR. VONKURNATOWSKI:

I HEREBY DEMAND THAT YOU RETRACT THE FOLLOWING COMMENTS WHICH YOU'VE REPUBLISHED ON https://www.youtube.com/watch?v=UYqY6tmxfqU:

1.) "THEO IS PROBABLY THE MOST EXCITING THING THAT HAS HAPPENED TO THAT FKIN PSYCHO SINCE HE GOT RAPED IN THE SHOWERS LAST MONTH."

I REQUEST THAT YOU PUBLISH A CORRECTION THAT GETTING RAPED DOES NOT EXCITE ME; THE LAW ALLOWS ME TO USE DEADLY FORCE TO DEFEND MYSELF AGAINST SEXUAL ASSAULT, & I WOULD IN FACT KILL ANY MAN WHO TRIED TO RAPE ME; I HAVE NEVER, SINCE BEING LOCKED UP, BEEN "RAPED IN THE SHOWERS LAST MONTH."

2.) "I'D BE WRITING A LOT OF LETTERS TOO IF IT KEPT WIENERS OUT OF MY BUTT"

I REQUEST THAT YOU PUBLISH THE CORRECTION

1

DESCRIBED IN "1"; & THAT I AM NOT SUBJECT TO ANAL RAPE IN CONSEQUENCE FOR WRITING LETTERS.

3.) "IF KAI IS MYSTERIOUSLY FOUND 'UNCONSCIOUS' IN HIS CELL, WE KNOW WHO DID IT, GANG GANG"

I REQUEST THAT YOU PUBLISH A CORRECTION THAT I AM NOT SUBJECT TO GANG VIOLENCE OR DEATH FOR EXERCISING MY RIGHT TO PETITION FOR REDRESS OR ATTENDING THIS FEDERAL OFFICIAL PROCEEDING.

4.) "'PERSUADE' A FELLOW INMATE TO SMASH SMASH SAAAMAAASH HIS TEETH OUT."

I REQUEST THAT YOU PUBLISH A CORRECTION THAT IT IS UNACCEPTABLE TO INCITE VIOLENCE AGAINST A PARTY & WITNESS TO A FEDERAL OFFICIAL PROCEEDING TO DISSUADE THEM FROM ATTENDING

5.) "IF WE SEND KAI ENOUGH HATE MAIL HE MIGHT SMASH HIMSELF"

I REQUEST THAT YOU PUBLISH A CORRECTION THAT IT IS UNACCEPTABLE TO WILFULLY & KNOWINGLY HARASS A PARTY & WITNESS TO A FEDERAL OFFICIAL PROCEEDING WITH THE INTENTION OF INDUCING THEM TO COMMIT SUICIDE SO THAT THEY WILL NOT ATTEND THE PROCEEDING.

2

6.) "HOPE KAI IS ENJOYING GETTING SA - MASHED IN PRISON"; WHICH IMPLIES A THREAT OF PRISON RAPE. I REQUEST THAT YOU PUBLISH THE CORRECTION DESCRIBED IN "1"; & THAT IT IS UNACCEPTABLE TO THREATEN A PARTY & WITNESS TO A FEDERAL OFFICIAL PROCEEDING WITH PRISON RAPE TO DISUADE THEM FROM ATTENDING.

7.) ALL OTHER COMMENTS OF A SIMILAR TENOR, TO BE CORRECTED AS DESCRIBED IN "1" - "6" ABOVE. I ALSO NOTE THAT IN SAID VIDEO, YOU STATED AN INTENTION TO DEPOSE ME, THEREBY RECOGNIZING THAT I AM A WITNESS TO A FEDERAL OFFICIAL PROCEEDING FOR THE PURPOSES OF 18 USC 1512.

DATE: 9/15/23

THANKS A BUNCH,

CALEB L. MCGILLVARY
IN PROPRIA PERSONA

3

# Exhibit D



Certificate of Registration

This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director



**Registration Number**

**PA 2-398-664**

**Effective Date of Registration:**
February 06, 2023
**Registration Decision Date:**
February 27, 2023

---

## Title
Title of Work: Smash, Smash, SUH-MASH!

## Completion/Publication
Year of Completion: 2013
Date of 1st Publication: February 02, 2013
Nation of 1st Publication: United States

## Author
Author: Caleb McGillivary
Author Created: text, Dramatic work
Citizen of: Canada
Domiciled in: United States
Year Born: 1988
Year Died: 1988

## Copyright Claimant
Copyright Claimant: Caleb McGillivary
NJSP P.O. Box 861, #102317G, Trenton, NJ, 08625, United States

## Certification
Name: Caleb McGillivary
Date: February 06, 2023

# Certificate of Registration





This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

# PA 2-398-110

**Effective Date of Registration:**
January 20, 2023
**Registration Decision Date:**
February 23, 2023

---

## Title
_____

**Title of Work:** Smash, Smash, SUH-MASH!

## Completion/Publication
_____

**Year of Completion:** 2013
**Date of 1st Publication:** February 01, 2013
**Nation of 1st Publication:** United States

## Author
_____

- **Author:** Caleb McGillivary
**Author Created:** words spoken by the interviewee
**Citizen of:** Canada
**Year Born:** 1988

## Copyright Claimant
_____

**Copyright Claimant:** Caleb McGillivary
NJSP P.O. Box 861, #102317G, Trenton, NJ, 08625

## Certification
_____

**Name:** Caleb McGillivary
**Date:** January 20, 2023

---

**Correspondence:** Yes

Page 1 of 1

# Exhibit E

# Certificate of Registration





This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Shira Perlmutter*

United States Register of Copyrights and Director

**Registration Number**

**TXu 2-367-123**

**Effective Date of Registration:**
March 26, 2023
**Registration Decision Date:**
May 01, 2023

## Title _____

Title of Work:   Settlement Offer for Theo Von

## Completion/Publication _____

Year of Completion:   2022

## Author _____

- Author:   Caleb McGillivary
Author Created:   text
Citizen of:   Canada
Domiciled in:   United States
Year Born:   1988

## Copyright Claimant _____

Copyright Claimant:   Caleb McGillivary
NJSP P.O. Box 861, #102317G, Trenton, NJ, 08625, United States

## Certification _____

Name:   Caleb McGillivary
Date:   March 26, 2023

Caleb L. McGillvary, Pro Se
#1222665/SBI#102317G NJSP
PO Box 861 Trenton, NJ 08625

August 8, 2024

Clerk, US Dist. Ct. - CDCA
US Courthouse
255 E. Temple St., Rm 180
Los Angeles, CA 90012

    RE: Caleb L. McGillvary v. Theodor VonKurnatowski
    Civil Action No. _____
    NOT YET ASSIGNED

Dear Clerk;
    Please find enclosed and file onto the docket my intial complaint, Civil Case Information Sheet, and IFP Application; initiating a civil action in this Court.

                    Kind Regards,

                    Caleb L. McGillvary
                    In Propria Persona

ENCL:
CC: FILE

PROOF OF SERVICE

    I, Caleb L. McGillvary, declare pursuant to 28 U.S.C. 1746 that on today's date, I placed in the institutional mailing system here where I'm incarcerated at NJ State Prison 3rd & Federal Streets Trenton, NJ 08625; with First Class Postage prepaid to be sent via USPS Mail; the original of my initial complaint with attached appendix, in forma pauperis application, civil case information sheet, and AO-121 form; to the Clerk of the Court at USDC-CDCA 255 E. Temple St. Rm 180 Los Angeles, CA 90012.

I hereby invoke the prison mailbox rule.

I declare under penalty of perjury that the foregoing statements made by me are true and accurate.

Executed this __8ᵗʰ__ Day of __August__, 20 24

                        _____

                        Caleb L. McGillvary, Pro Se
                        #1222665/SBI#102317G NJSP
                        PO Box 861 Trenton, NJ
                        08625-0861

C. MCGILLVARY
#1222665/SBI#1023176
NSSP PO BOX 861
TRENTON, NJ
08625

CLERK
U.S. DIST. CT. - C.D. CA
OFFICE OF THE CLERK
255 E. TEMPLE ST. RM 180
LOS ANGELES, CA
90012

RETURN RECEIPT
REQUESTED

RETURN RECEIPT
REQUESTED







LEGAL MAiL